## Commonwealth v. Chadwick.

*William J. MacCarter, Jr.,* and *Louis A. Bloom,* for Commonwealth.
*Taylor, Chadwick & Weeks* and *Thomas A. Curran,* for defendant.

MacDade, J., Jan. 6, 1930.—A proceeding in summary conviction was instituted against the defendant for an alleged violation of section 1016 of article x of the Motor Vehicle Act of May 1, 1929, P. L. 905, which section relates to "Thru Traffic Stop" signs.

This section reads as follows:

"Section 1016. Vehicles Must Stop at Certain Through Highways.—It shall be unlawful for the driver or operator of any vehicle, street car or trackless trolley omnibus, *before entering a through highway,* to fail to come to a *full*

stop, *within a reasonable distance before entering the intersection on such through highway,* when 'THRU TRAFFIC STOP' sign has been erected in accordance with the provisions of section one thousand one hundred and twelve (1112) of this act."

Section 1112 provides:

"The Secretary of Highways of this Commonwealth, with reference to State highways, and local authorities in cities, boroughs, incorporated towns, and townships of the first class, with reference to highways under their jurisdictions, *are hereby authorized to designate through highways, by erecting at the entrance thereto from intersecting highways* signs bearing the words 'THRU TRAFFIC STOP,' *the word 'STOP' to be in letters at least six (6) inches in height, and the letters of the words 'THRU' and 'TRAFFIC' shall be of the form and size approved by the Secretary of Highways of this Commonwealth,* notifying operators of vehicles and street cars to come to *full stop before entering or crossing such designated highway:* Provided, however, that vehicles, street cars and trackless trolley omnibuses shall not be subject to the provisions of this section, at any intersection during the hours when a traffic signal is actually in operation *or where a peace officer is actually on duty directing traffic."*

The proceeding was instituted by an officer of the State Highway Patrol, who was stationed at the intersection of two State highways, one of which was designated as a "Through Highway," charging that the defendant did, on Aug. 4, 1929, in the afternoon thereof, at the intersection of Providence Road and Waterville Road, violate section 1016, article x, of the Motor Vehicle Act, as aforesaid, by failing to bring his motor vehicle, which he was operating, to a stop or full stop at a sign bearing the inscription "Thru Traffic Stop," alleged to be placed or erected at the entrance thereto. There was no charge of recklessness or carelessness in the manner of the operation of the said vehicle; indeed, there is very little variance between the accounts of the occurrence, which took place when the defendant had full knowledge of the presence of the officer stationed at the intersection of Providence Road and what is commonly called the "Sproul" Road, leading from Chester to Radnor.

The defendant waived a summary hearing and gave bond to appear in court, which he did, and a trial was had and the defendant orally acquitted and discharged and the case dismissed upon the evidence adduced and the law applicable thereto. This proceeding was correct, for the defendant could raise the question of jurisdiction at any time: Com. *v.* Good, 33 Dauphin Co. Reps. 74.

To convict him in any event of violating the Automobile Act, the Commonwealth must satisfy the court beyond a reasonable doubt of the defendant's guilt: Com. *v.* Garrett, 16 Del. Co. Reps. 348.

The complainant in the case at bar preferred charges (complaint) before one Justice of the Peace Rockett, of Eddystone Borough, while the act or occurrence complained of actually occurred in the Township of Lower Providence and on a highway leading into the City of Chester and not to Eddystone Borough, which is located east of Chester, while the act alleged occurred north of the City of Chester. Apparently, the patrolman was a stranger to the vicinity, and no inquiry was made by him *whether there might be any nearer available magistrate* to whose jurisdiction the matter was committed by the express terms of the act.

This action of the officer we do not regard in this case as either intentionally oppressive or in wilful disregard of the law; as a matter of fact, he evidently did not know that the law put a special duty of inquiry upon him as to such

matter; nevertheless, the injunction of the Legislature is express, that such complaints must be made before the "nearest available magistrate" (section 1201). The defendant established that at least one magistrate, Alderman Oglesby, of the 1st Ward of the City of Chester, with offices at No. 1821 Edgmont Avenue, was nearer the scene of the arrest, and that he was in fact "available" when the complaint was made. The presumption in such cases, we think, should always be that the nearest magistrate is "available," unless it affirmatively appear that he is entirely absent from the scene of his duties or incapacitated by illness or otherwise.

If this question was presented to this court as a novel one, we think the conclusion that Justice of the Peace Rockett was without jurisdiction would present no difficulty, for it has already been decided by another court of this Commonwealth, in the recent opinion of Judge Hargest in Dauphin County in Com. *v.* Good, *supra*, who declared:

"The statute is plain, positive and mandatory; jurisdiction was given to the nearest available magistrate, and there were three nearer than the alderman before whom the charge was brought, two of whom, as far as the evidence disclosed, were available.

"We may say, in passing, that committing magistrates should first inquire into their jurisdiction, under this statute, before accepting cases.

"The defendant lost no rights by waiving a summary hearing and giving bond to appear in court. He could raise the question of jurisdiction at any time. Even though he had taken an appeal, it would not have operated to give consent to jurisdiction. When, therefore, the evidence disclosed the lack of jurisdiction of the alderman, it was the duty of the court, on motion of the defendant, to dismiss the case, which was done."

This question has also been passed upon in a recent decision by Judge Corson, of Montgomery County, in the case of Com. *v.* Swartley, from which recent opinion we quote the following:

"The defendant, and it may be properly, assumed the burden of showing that the magistrate from whom this appeal was taken was not 'the nearest available magistrate' within the meaning of section 1201 of the act. It was shown by the defendant's testimony to the satisfaction of the court, and apparently of the Commonwealth's officers as well, that the magistrate from whose office this appeal was taken was not by several miles the nearest available magistrate.

"Such being the fact, and the offense charged not being designated either as a felony or as a misdemeanor, it follows that the magistrate before whom the information was lodged in the present case did not have jurisdiction. The contention of the Commonwealth, however, is that the question of jurisdiction should have been raised before the magistrate, and bail having been entered for an appeal to the Quarter Sessions, the Quarter Sessions hearing the case *de novo* has jurisdiction in the matter. We cannot agree with this contention. The question of jurisdiction of the subject-matter may be raised at any time, even though the case has gone from a magistrate's office to the Supreme Court before the question is brought up. Where a court has jurisdiction of the subject-matter, a defendant might waive jurisdiction of his person in such a manner as to come within the jurisdiction of the court, but if the court has no jurisdiction of the subject-matter, no appeal, waiver or other act of the defendant can confer such jurisdiction upon such court: In re Scottdale Borough Annexation, 91 Pa. Superior Ct. 1.

"It may be that the phrase 'nearest available magistrate' may add to the difficulties of prosecuting the minor offenses named in the Motor Vehicle Act,

but as the jurisdiction for the prosecution of such offenses has been fixed by the statute, we cannot by any judicial interpretation change the plain wording of the Act of Assembly. This question has already been decided in an opinion filed by Judge Hargest, of Dauphin County, in Com. *v.* Good, 33 Dauphin Co. Reps. 74.

Why the State highway partolman did not take the defendant before the "nearest available magistrate" we are not clearly advised, but if the practice of instituting all the cases of this patrolman for summary offenses before selected justices or alderman, who in the course of time perhaps fail to act impartially, but at the dictates of such officer, is persisted in, such practice should be discontinued as unwarranted and the officers should receive the severest reprimand from their superior officer in the State Highway Department for such reprehensible procedure. The unwarranted practice should be immediately discontinued.

For this reason, the defendant was entitled to an acquittal and to have the case dismissed, which we did, *supra,* and for other reasons also, namely:

1. There was no competent evidence before us that the sign "Thru Traffic Stop" was official; that is to say, that the word "Stop" was in letters six inches in height, and that the letters of the words "Thru" and "Traffic" were in the form and size approved by the Secretary of Highways of this Commonwealth.

2. There was no competent evidence before us that the said Secretary of Highways, with reference to State highways, designated Providence Road or Sproul Road, both of which are such, as a "through highway."

3. Because the sign, *supra,* was not erected at the entrance thereto of a State highway or highways designated as a "through highway." The "Stop" sign was on the right-hand side of Providence Road and not at the entrance to the Sproul Road, which was said to be a "through highway," but not by legal proof of such designation by the Secretary of Highways.

It appears by the testimony that, on Aug. 4th last, there was a "stop sign" placed on the right-hand side of Providence Road, at or near the intersection of that road and the Waterville Road, a minor highway, since removed to another location, being the entrance to the said "through highway," where it intersects the said Providence Road. The officer evidently regarded this sign as controlling traffic entering "the Sproul Road," which here bears away on the left from the Providence Road toward Swarthmore; and as requiring a vehicle to stop approximately at the sign itself. Such an interpretation loses sight of the fact that while there is a general paved area at this point, in the form of a generous triangle running southwardly toward Chester, nevertheless the lanes of the traffic on the "Sproul Road" do not actually intersect with traffic on the Providence Road for quite a considerable distance beyond the sign as then placed.

The defendant pointed out, first, that, while the officer undertook to testify that the "Sproul Road" is a through-traffic road, it was essentially a conclusion of law, flowing from the acts and decisions of a particular officer, the Secretary of Highways, evidenced by his causing signs of a particular character to be placed against traffic approaching the intersection of such road. The officer actually knew no more about it than that there was a sign of some sort at the place where the Providence Road crosses the Waterville Road. No one contends that the latter road is a through-traffic highway; it is not even a State highway route. Even if we could indulge the rather violent assumption that every sign placed along any highway is there by act of some responsible authority, it yet remains to be established as a matter of fact

that the sign complies with the exact provisions of the law, which are highly mandatory and precise. There was no evidence that this sign in question bore the word "Stop" in letters at least six inches high, or anything else establishing that it was such a sign as motorists are bound to give particular attention to.

While the defendant did not stop at the sign, and moved across the Waterville Road, he did actually come to a stop a few feet further on, before reaching the intersection of the traffic lane of the Sproul Road. True, he admittedly did this under compulsion of the officer's orders, as he did not in fact see or know of the presence of the sign; but the stop was none the less effective, and we think that an officer's action in preventing illegality is even more commendable than when he stands by and permits unintentional breaches of the law with the intention of prosecuting such infractions.

The officer, who was in uniform, was at the time stationed at this point, as he says, for the purpose of "checking" on this "stop" sign. When the defendant approached the intersection, he was in the roadway and within this paved triangle. The defendant pointed out that, under these circumstances, the intersection was, so far as he could observe and know, manned by an officer who was directing traffic, and the officer did in fact direct him, though only to "pull up" beside the road. The significance of this cannot escape the court, because the Motor Vehicle Act expressly provides, with reference to these "Thru Traffic Stop" signs, "That vehicles . . . shall not be subject to the provisions of this Section at an intersection during the hours when a traffic signal is actually *in* operation *or when a peace officer is actually on duty* directing traffic (section 1112 *a*).

It would certainly be unfair to the motoring public, made up both of our own citizens and welcome visitors from other states, to hold that they are denied the protection of this latter provision of the law, which is just as important and no doubt just as wisely considered as the other provisions of the act; and the provision would lose all practical utility unless the motorist may properly assume that a uniformed peace officer, stationed in a highway at an intersection, is there directing traffic. Certainly, under the circumstances of the present case, the presence and action of the prosecuting officer make it at the very least doubtful whether the defendant was bound to stop under the circumstances, and no such uncertainty can be brooked where a penalty is sought involving a solemn conviction for illegal misconduct.

At the hearing, the defendant insisted upon all his rights; this placed the burden upon the complainant, as the section is penal, and the courts are bound to protect citizens against the indignity and injustice of convictions not clearly shown to be justified in law and in fact.

Such a statute, being penal, must be strictly construed, and, being ambiguous, must be and is construed in favor of the innocence of the defendant: Com. *v.* Walck, 18 Del. Co. Reps. 19.

4. Because "vehicles shall not be subject to the provisions of this section at an intersection during the hours when a traffic signal is actually in operation or *when a peace officer is actually on duty directing traffic*" (section 1112 *a*).

This officer was in uniform at the time of the alleged offense and stationed at the intersection of Sproul Road (through highway) and the said Providence Road. Why should not the defendant properly assume that a uniformed peace officer, stationed in a highway at an intersection, is there actually on duty directing traffic?

484

We think the prosecution must fail for the above reasons, and, therefore, we make the following

### Order.

And now, Jan. 6, 1930, the above matter coming on to be heard by testimony and argument, after due consideration of the proofs and allegations, the court doth order and decree that the defendant, E. Wallace Chadwick, be and is hereby found not guilty of the charge preferred against him in violating section 1016 of article X of the *Motor Vehicle Act;* further, that he, the said E. Wallace Chadwick, be and is hereby discharged from custody and the case is dismissed.

From William R. Toal, Media, Pa.